UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATI GILL,<br><br>    Plaintiff,<br><br>  – against –<br><br>ARAB BANK, PLC,<br><br>    Defendant. | **MEMORANDUM AND ORDER**<br><br>11-CV-3706 |

**JACK B. WEINSTEIN, Senior United States District Judge:**

<u>Table of Contents</u>

I. Introduction .................................................................................................................. 2
II. Admissibility Standards............................................................................................... 3
III. Proffered Witnesses .................................................................................................... 7
 A. Witnesses Proffered by Plaintiff and Challenged by Defendant.................................... 7
  1. Dr. Cynthia Trop.................................................................................................. 7
  2. Dr. Eli Alshech ................................................................................................... 8
  3. Gil Erez................................................................................................................. 9
  4. Igal ..................................................................................................................... 11
  5. Dr. Matthew Levitt ............................................................................................ 12
  6. Arieh Spitzen ..................................................................................................... 13
  7. Timur Kuran ....................................................................................................... 14
  8. Nelson Everhardt ............................................................................................... 15
  9. Jimmy Gurulé ..................................................................................................... 15
  10. Wayne Geisser.................................................................................................... 17
  11. Jonathan Winer .................................................................................................. 18
  12. Michael Diamond .............................................................................................. 19
 B. Witnesses Proffered by Defendant and Challenged by Plaintiff.................................. 19
  1. Anne T. Vitale and Paul Allen Schott ............................................................... 19
  2. William M. Isaac ................................................................................................ 20
  3. George T. Abed .................................................................................................. 20
  4. Marwan Nsouli .................................................................................................. 22

     5.      Chakib Cortbaoui ................................................................................................. 23
     6.      Yair Dagan ........................................................................................................... 24
     7.      Jonathan Benthall .............................................................................................. 25
     8.      Beverly Milton-Edwards ................................................................................. 26
     9.      Ilan Paz ................................................................................................................ 28
    10.    Bar Zakay ............................................................................................................ 29
    11.    Pinhas Shmilovitch ........................................................................................... 29
    12.    Barouch Yadid ................................................................................................... 30
    13.    Robert Lacey ...................................................................................................... 30
IV.  Conclusion ................................................................................................................... 31

## I.    Introduction

While he was in Israel, plaintiff Mati Gill, an American citizen, was injured by a bullet fired from Gaza in 2008. Claiming that the shooter was employed by a terrorist group, Hamas, which was financed by defendant Arab Bank (the "Bank"), he sues the Bank for damages. *See Gill v. Arab Bank, PLC*, --- F. Supp. 2d ---, 11-CV-3706, 2012 WL 4960358 (E.D.N.Y. Oct. 17, 2012) (extensive discussion of facts and law under the applicable Antiterrorism Act, 18 U.S.C. § 2333(a)).

Before the court are motions with respect to the admissibility of expert reports and lay testimony. Some of the issues raised in the parties' *Daubert* motions have been addressed in the *Linde* cases involving other terrorist attacks. *See, e.g.*, *Linde v. Arab Bank, PLC*, 04-CV-2799-NG-VVP (E.D.N.Y. Dec. 5, 2011), CM/ECF No. 773. Since the issues of fact and law in the *Linde* cases are different, the questions now presented must be addressed *ab initio*.

## II.         Admissibility Standards

The parties are attempting to create opposing pictures supporting their positions, to be viewed in light of complex substantive and procedural law. *See Gill*, 2012 WL 4960358. Involved are the regulation of banking systems in the United States, Jordan, Lebanon, Israel, the West Bank and Gaza; the security operations of Israel and Hamas in controlling and disposing of their military and security forces; the states of mind of the Bank going back to the Twentieth Century under evolving regulations and oversight regimes; violent military groups, distinct from Hamas, vying for influence and "credit" for injuring civilians; myriad religious and charitable institutions with possible connections to Hamas and other terrorist groups; the United States' and other countries' policies, prosecutions and other actions respecting terrorism financing and money laundering; access to, and interpretation of, various forms of media utilized to claim credit for attacks on civilian populations; medical problems and diagnoses connected to plaintiff's injuries; and other matters. The relationships among, and situations of, the various relevant organizations were constantly changing; the image was dynamic not static; pixels and factoids, discrete details and snippets of information, must be established and analyzed to provide the jury with an understandable and relevant story-line whose reliability they can agree upon.

With so many vectors at play—most of which will not be familiar to jurors—a wide gateway to large amounts of evidence must be provided. Jurors will not have the broad

background knowledge and hypotheses they bring to bear in run-of-the-mill cases within their ken.

The Federal Rules of Evidence and Rules of Civil Procedure are sufficiently flexible and merits-oriented to permit a jury to decide the case properly if it has the information needed to do so; yet, overwhelming the jury with excessive and confusing detail must be avoided. *See* Fed. R. Civ. P. 1 ("The[] rules [of Civil Procedure] . . . . should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."); Fed. R. Evid. 102 ("administer every proceeding fairly, eliminate unjustifiable expense and delay . . . to the end of ascertaining the truth and securing a just determination").

Particularly useful in considering the issues now presented are Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure (discovery of expert reports), as well as Rules of Evidence 401-404 (relevancy) and 702-704 (expert testimony and bases for opinions). These provisions are sufficiently pliant to permit both parties to adequately present their case.

An intense, fact-specific inquiry is required in determining admissibility. *See Sprint v. Mendelsohn*, 552 U.S. 379, 387-88 (2008) ("Relevance and prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case, and thus are generally not amenable to broad *per se* rules.") (citing Fed. R. Evid. 401 advisory committee note).

Rule 702 reflects the basic principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). It is central to the decisions now made. If the expert testimony is arguably reliable and it will help the jury, it should be admitted. The Rule reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) *the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue*;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added). Whether to admit or exclude expert testimony is within the broad discretion of the district court. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Rule 703 controls the bases upon which an expert may rest testimony. It explicitly permits an expert's opinion to rest on hearsay and other inadmissible evidence so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. The rule allows for the proponent of expert testimony to disclose to the jury inadmissible evidence upon which an expert relied if the probative value of such evidence "substantially outweighs" its prejudicial effect. *Id.* In the instant case such disclosure is essential in the esoteric fields involved if the experts' opinions are to be properly evaluated.

Rule 704 reinforces the "basic approach" adopted by the Federal Rules of Evidence to admit opinions "when helpful to the trier of fact."  *See* Fed. R. Evid. 704 advisory committee note.  The rule provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704.  That an expert will opine on an operative fact the jury must decide is irrelevant to a *Daubert* challenge.

In a number of instances, the experts proffered rely upon data obtained through personal experience as security or military officials; for security reasons information would not be open to adequate inquiry on cross-examination.  Effective cross-examination was strongly relied upon by the Advisory Committee on the Federal Rules of Evidence to validate the use of evidence not otherwise admissible.  *See* Fed. R. Evid. 705 advisory committee note (explaining that broad discovery of the bases for an expert's opinion allows an adversary to effectively cross-examine the expert as to the facts and data he or she relied upon).  *See also Olin Corp. v. Certain Underwriters at Lloyd's London*, 468 F.3d 120, 134 (2d Cir. 2006) ("[C]ross-examination . . . is an appropriate way of attacking weak expert testimony, rather than complete exclusion.").

In sum, each proffered witness's testimony must be approached applying a strong policy in favor of full admissibility required for the jury to understand the complex details of this case.  Those particulars are remote from the normal life experience upon which jurors rely when deciding cases.  Admissibility of expert reports and testimony is therefore strongly favored.

Because the decisions of admissibility affect discovery decisions, the magistrate judge sat with the undersigned judge in order to minimize discovery burdens.  The minimization is

particularly advisable since the issues of admissibility and discovery largely overlap those in the *Linde* litigation overseen by the same magistrate judge.

Motions *in limine* as to the admissibility of expert reports and testimony were heard on October 3, 2012. Rulings were stated orally on the record. They are explained below. Following the hearings, the parties were told that they could proffer rebuttal witnesses where this court approved admissibility of an expert opinion that the *Linde* court excluded. *See* Hr'g Tr. 17:7-18:5; 19:3-13, Oct. 3, 2012 (Pohorelsky, M.J.), CM/ECF No. 156.

All relevant, additional, and necessary discovery shall be promptly completed under the supervision of the magistrate judge. *See* Hr'g Tr. 15:10-13, Feb. 23, 2012, CM/ECF No. 18; Hr'g Tr. 164:23-165:1; 165:12-13, Oct. 3, 2012, CM/ECF No.179. A report of a rebuttal witness need not comply with Rule 26 of the Federal Rules of Civil Procedure for the purposes of the parties' summary judgment briefing, *see* Hr'g Tr. 19:2-10, Oct. 3, 2012 (Pohorelsky, M.J.), CM/ECF No. 156; an affidavit will suffice. *See id.* Since both the *Linde* and this, the *Gill*, cases have been pending for some time, discovery has been effectively completed.

### III. Proffered Witnesses

The following are rulings on expert and lay testimony proffered for trial and summary judgment (*see also* Hr'g Tr., Oct. 3, 2012, CM/ECF No.179):

### A. Witnesses Proffered by Plaintiff and Challenged by Defendant

#### 1. Dr. Cynthia Trop

Defendant's motion to preclude plaintiff's expert Dr. Cynthia Trop from testifying and to exclude her report is denied. Dr. Trop is a board certified urologist qualified to opine on

reproductive and other medical impairments suffered by plaintiff as a result of the gunshot that wounded him in the groin area on April 4, 2008. Conflicting evidence of the cause of plaintiff's injuries does not diminish Dr. Trop's qualifications to testify as an expert in this litigation. Any conflict between Dr. Trop's analysis and other medical analyses of plaintiff speak to credibility and not compliance with the Federal Rules of Evidence and *Daubert*. *See Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 186 (2d Cir. 2001) ("[G]aps or inconsistencies in the reasoning . . . go to the weight of evidence, not to its admissibility.").

In the event Dr. Trop will testify at trial, plaintiff shall submit himself for a physical examination and provide semen samples to the doctor at least two weeks before trial.

## 2. Dr. Eli Alshech

Defendant's motion to preclude plaintiff's expert Dr. Eli Alshech from testifying and to exclude his report is denied. Dr. Alshech is a private consultant to the Israel Security Agency ("ISA"). He previously served as director of the Jihad and Terrorist Studies Project at the Middle East Media Research Institute. He focuses on the study of extremist jihadist groups, particularly their presence on the Internet, dissemination of propaganda, and claims of responsibility for terrorist acts.

Dr. Alshech's report addresses the credibility of claims of responsibility made by Hamas and other terrorist groups for the shooting attack that allegedly injured plaintiff on April 4, 2008. Defendant contends that Dr. Alshech's opinion is not of the type reasonably presented by experts in his field and that his report is a mere conduit for inadmissible hearsay.

Dr. Alshech's experience, analytic techniques and report and testimony meet *Daubert*'s and Rule 702's requirements. His report and testimony would be helpful to the jury. Hamas's responsibility for the shooting attack that allegedly caused plaintiff's injuries is a critical issue in the case. The subject of Hamas's and other groups' strategies and methods of claiming "credit" for terrorist attacks is an esoteric one about which the jury is likely to have little knowledge. While that subject may not be susceptible to the same scientific inquiry as other areas of knowledge that have been thoroughly studied and criticized, Dr. Alshech relies upon methods that an expert in his field would normally use. *See Kumho Tire Co., Ltd.*, 526 U.S. at 151 ("It might not be surprising in a particular case, for example, that a claim made by a scientific witness has never been the subject of peer review, for the particular application at issue may never previously have interested any scientist."). Rejected is defendant's argument that Dr. Alshech's report should be disqualified for reliance on inadmissible hearsay. Dr. Alshech's report "necessarily relies on secondary sources to opine about secretive terrorist organizations." *See United States v. Paracha*, No. 03-CR-1197, 2006 WL 12768, at *21 (S.D.N.Y. Jan. 3, 2006), *aff'd*, 313 F. App'x 347 (2d Cir. 2008) (denying motion to exclude terrorism expert challenged, *inter alia*, for faulty methodology). His background will not prevent adequate cross-examination.

### 3. Gil Erez

Defendant's motion to preclude plaintiff's expert Gil Erez from testifying and to exclude his report is denied. Mr. Erez is a retired colonel of the Israel Defense Forces ("IDF") who served in military intelligence and currently teaches in the Intelligence Section of the IDF

Academy of Tactical Command, at the IDF College of Command and General Staff, and at the University of Haifa.  He retired from the IDF in 2006.

Plaintiff proffers Mr. Erez to opine on whether Hamas is responsible for the attack and with regard to the authenticity of a video that purports to depict the attack (the "Video").

Defendant challenges Mr. Erez's qualification to serve as an expert and the reliability of his methodology.  Mr. Erez has experience, from his service in the IDF, investigating terrorist attacks that involved analysis of photographs or videos produced by terrorist groups.  His opinion of the Video is based on a topographical analysis of the terrain surrounding the attack, a comparison of the topographical analysis to still frames from the Video, identification of the weapon and manner of firing depicted in the Video, and a comparison of still frames from the Video with photographs taken during the attack.

Asserted by Mr. Erez is that Hamas's claims of responsibility for the Attack are credible. Mr. Erez reaches this conclusion by analyzing several data points, including the content of the Video and the timing of its release to the public, as well as his analysis of Internet postings claiming credit for the attack that he attributes to Hamas.

Mr. Erez's qualifications and methodology meet the standard required by *Daubert* and Rule 702.  His experience, background and skills qualify him to testify as to Hamas's responsibility for the attack and the authenticity of the Video.  The Video itself is of limited probative value with regard to the Bank's liability for plaintiff's injuries, but the difficulty of obtaining direct evidence of Hamas's participation in the attack will force plaintiff to rely on

circumstantial evidence for the jury to understand Hamas's participation—or lack thereof—in the attack. The witness's background will not prevent adequate cross-examination.

### 4. Igal

Defendant's motion to preclude plaintiff's expert Igal from testifying and to exclude his report is denied. (Igal's last name is withheld pursuant to the protective order applicable to this case. *See Rep. and Rec.*, *Gill v. Arab Bank, PLC*, 12-CV-3706 (Aug. 23, 2012) (Pohorelsky, M.J.), CM/ECF No. 57 (interpretation of confidentiality designations under the applicable protective order)). Igal is a retired 24-year veteran of the ISA. He served as the head of the ISA Southern District Headquarters responsible for counter-terrorism investigations in Gaza.

He opines on Hamas's responsibility for the attack, the relationship between Hamas and the Defenders of Al Aqsa (a group that also claimed credit for the attack), and the identity of the individual responsible for firing the gunshot that wounded plaintiff.

Defendant's argument to exclude Igal's report and testimony is similar to arguments made in favor of excluding the reports and testimony offered by Dr. Alshech and Mr. Erez, *see* Parts III.A.2-3, *supra*. Igal's analysis of Internet-based material is rooted in the methodology employed by other experts in his field. His specialized knowledge will assist the jury to understand the evidence and determine the facts. He is qualified as an expert by his knowledge, training, skill and experience. The witness's background will not preclude adequate cross-examination.

### 5. Dr. Matthew Levitt

Defendant's motion to preclude plaintiff's expert Dr. Matthew Levitt from testifying and to exclude his report is denied. Dr. Levitt is a scholar on terrorism, a former Deputy Assistant Secretary for Intelligence and Analysis at the United States Treasury Department, and a former FBI investigator. He has written extensively on terrorism in the Middle East and is the author of *Hamas: Politics, Charity and Terrorism in the Service of Jihad* (2006). Several courts have deemed Dr. Levitt qualified to deliver expert testimony similar to that which he proffers in this case. *See, e.g.*, *United States v. Defreitas*, No. 07–CR–543, 2011 WL 317964, at *4-7 (E.D.N.Y. Jan. 31, 2011); *United Sates v. Holy Land Found. for Relief and Dev.*, No. 04-CR-240-G, 2007 WL 2059722, at *2-3 (N.D. Tex. July 16, 2007).

Dr. Levitt opines as to the organizational structure of Hamas, focusing on the leadership network of international charities and funders known as *da'wa* and international donors that maintained accounts with the Bank or processed fund transfers to Hamas through the Bank. Dr. Levitt is proffered in support of plaintiff's case-in-chief and to rebut the defendant's experts Jonathan Benthall and Dr. Beverly Milton-Edwards, discussed *infra*, Parts III.B.7-8.

Dr. Levitt's background and professional experience qualify as "specialized knowledge" gained through "experience, training, or education." Fed. R. Evid. 702. His report and proposed testimony is reliable. His testimony will aid the jury in understanding important issues in this litigation concerning Hamas's funding and organization. The witness's background will not prevent adequate cross-examination.

### 6. Arieh Spitzen

Defendant's motion to preclude plaintiff's expert Arieh Spitzen from testifying and to exclude his report is denied.  Mr. Spitzen is the former head of the Israeli military's Department for Palestinian Affairs.  He was responsible for writing and updating an annual comprehensive review of Hamas's *da'wa* network.

Plaintiff proffers Mr. Spitzen to opine on four subjects: (1) charitable committees, known as *zakat* committees, which plaintiff alleges to be alter egos of, or front organizations for, Hamas; (2) transfers made from the Bank to several of Hamas's senior leaders in the Gaza Strip and West Bank; (3) the Saudi Committee for the Support of the Intifada (the "Saudi Committee"), which plaintiff alleges distributed money to designated families of Palestinian "martyrs" and those wounded or imprisoned in perpetrating terrorist attacks; and (4) the Bank's alleged transfer of funds to Hezbollah that were allegedly funneled to the families of Palestinian "martyrs."

Defendant chiefly attacks Mr. Spitzen's opinion on the first subject—i.e., the relationship between certain *zakat* committees and Hamas.  Mr. Spitzen identifies eighteen categories of information he considered in order to determine whether a particular entity is an alter ego of Hamas.  Defendant contends this methodology is unreliable and cause for excluding Mr. Spitzen's report and testimony under Rule 702.  Mr. Spitzen's eighteen-factor analysis encompasses categories of information generally considered by experts who analyze entities believed to act for terrorist entities.  His methodology passes muster under *Daubert* and Rule 702.  His report and testimony will aid the jury in understanding issues related to the Bank's

conduct and state of mind.  Mr. Spitzen's reliance and consideration of inadmissible evidence, including hearsay, are not grounds to exclude his report.  *See* Fed. R. Evid. 703.  The witness's background will not prevent adequate cross-examination.

### 7.  Timur Kuran

Defendant's motion to preclude plaintiff's expert Timur Kuran from testifying and to exclude his report is denied.  Mr. Kuran is a Professor of Economics and Political Science and the Gorter Family Professor of Islamic Studies at Duke University.

Plaintiff proffers Mr. Kuran to rebut the expert report and testimony of defendants' experts Jonathan Benthall and Beverley Milton-Edwards, discussed *infra*, Parts III.B.7-8, on the topic of *zakat* committees.  Mr. Kuran provides testimony on the term, concept and practice of *zakat*, including its historical origins and contemporary practice.

The issue of *zakat* committees is of critical importance to this litigation.  Plaintiff alleges the Bank maintained accounts for and provided financial services to *zakat* committees which subsequently distributed funds to Hamas and its operatives in support of Hamas's paramilitary activities.  *See* Amended Complaint, *Gill v. Arab Bank, PLC*, No. 11-CV-3706 (E.D.N.Y. Mar. 9, 2012) ("Am. Compl.") at ¶¶ 157-65, CM/ECF No. 17.  The term *zakat* is not likely to be well-known to jurors.  General epistemological analysis of the term is likely to help jurors understand the evidence presented.  Mr. Kuran's extensive background as a scholar of Islamic economics and *zakat* practices, including his review of literature by notable scholars regarding *zakat* practices, qualifies him as an expert under Rule 702 of the Federal Rules of Evidence.  The basis for expert testimony is not limited to the results of scientific experiment.  *See Tyus v. Urban*

*Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 2001) ("[T]he measure of intellectual rigor [required to pass muster under Rule 702] will vary by the field of expertise and the way of demonstrating expertise will also vary.").

### 8. Nelson Everhardt

Defendant's motion to preclude plaintiff's expert Nelson Everhardt from testifying and to exclude his report is denied in part. Mr. Everhardt is a former Vice President and Corporate Compliance Executive for Bank of America and currently a banking consultant. Plaintiff proffers Mr. Everhardt to testify as to banking concepts, technology, and processes.

Defendant challenges Mr. Everhardt's qualification as an expert pursuant to Rule 702 and the relevance of his report pursuant to Rule 401.

Mr. Everhardt is qualified to offer expert testimony based on his professional background, knowledge, experience, and consulting on topics such as anti-money laundering compliance, international banking, and global wire transfers. An explanation of banking terminology and concepts will aid the jury in understanding complex evidence on topics of critical importance to this litigation, including the Bank's conduct and state of mind.

To comply with Rule 401 on relevancy, Mr. Everhardt will issue a revised expert report and confine his testimony to banking terms and standards relevant to the years 2000 to 2008.

### 9. Jimmy Gurulé

Defendant's motion to preclude plaintiff's expert Jimmy Gurulé from testifying and to exclude his report is denied in part. Mr. Gurulé is a former Under Secretary (Enforcement) in

the United States Treasury Department and is currently a law professor at Notre Dame Law School.

Plaintiff proffers Mr. Gurulé to testify as to the processes and policies by which the United States government designates a person or entity as a Specially Designated Terrorist ("SDT"), Foreign Terrorist Organization ("FTO"), or Specially Designated Global Terrorist ("SDGT"). Mr. Gurulé also opines as to the purported use by Hamas and other terrorist groups of charitable organizations as a tool to further political goals.

Mr. Gurulé's opinions about the relationship between terrorist organizations, such as Hamas, and social service or charitable organizations—for example, his opinion that terrorist organizations use money to win the "'hearts and minds' of the local populace" (Expert Opinion Report of Jimmy Gurulé Report at 3-4)—are excluded pursuant to Rule 702, *Daubert*, and Rule 403. Plaintiff has failed to establish any basis upon or expertise from which Mr. Gurulé is qualified to opine on such topics. Even in the event that he was qualified to opine on such topics, the probative value of the opinions is substantially outweighed by their prejudicial effect. Before trial, Mr. Gurulé will reissue his report in a form that does not include any opinions about the relationship between terrorist organizations and social service or charitable organizations.

Mr. Gurulé is qualified and permitted to explain the procedure by which individuals and organizations are designated as terrorists by the United States government. An individual's or organization's status as an FTO, SDT, or SDGT, however, will have limited bearing on issues such as the Bank's conduct or mental state. Designation of an organization as an FTO, SDT, or

SDGT is subject to a standard of proof that is lower than the preponderance of the evidence standard that plaintiff must meet in this case.  *See* 50 U.S.C. § 1701(a)(1)(B) (granting President authority to freeze assets of foreign countries and nationals that are subject to the jurisdiction of the United States); 8 U.S.C. § 1189 (procedure for challenging designation as FTO); 31 C.F.R. § 501.807 (procedure for seeking "administrative reconsideration" of designation as SDT or SDGT).  The witness's background will not prevent adequate cross-examination.

At summary judgment, plaintiff will address what probative force, if any, the Secretary of State's designation of an individual or organization as an FTO, SDT, or SDGT will have on the Bank's liability.

### 10. Wayne Geisser

Defendant's motion to preclude plaintiff's witness Wayne Geisser from testifying and to exclude his report is denied.  Mr. Geisser is a certified public accountant, certified valuation analyst, and a certified fraud examiner.  He is a former Branch Chief in the United States Securities and Exchange Division of Enforcement.

Plaintiff proffers Mr. Geisser to summarize and analyze certain of the Bank's records that were produced in discovery.  Mr. Geisser's report is offered as summary evidence pursuant to Rule 1006 of the Federal Rules of Evidence.  That rule allows summaries and charts to be presented where the "contents of voluminous writings, recordings, or photographs . . . cannot be conveniently examined in court."  Fed. R. Evid. 1006.

Defendant argues that Mr. Geisser's portrayal of transactions pertaining to the Saudi Committee presents an unfair picture of Saudi Committee transactions carried out by the Bank.

Mr. Geisser summarizes only 8% of all Saudi Committee transactions that were funneled through the Bank. Those transactions account for in excess of 75% of the monetary value of the bank transactions pertaining to the Saudi Committee. Mr. Geisser excluded from his analysis transactions involving less than $300.

Mr. Geisser's charts are admissible. They are summaries of the contents of voluminous data. The charts will streamline the presentation of that data to the jury, saving the jury time and avoiding unnecessary confusion. Because the underlying data to Mr. Geisser's summary charts was produced by and is available to the Bank, no prejudice is suffered by the Bank. The accuracy of Mr. Geisser's summaries will be decided by the jury.

### 11. Jonathan Winer

Defendant's motion to preclude plaintiff's expert Jonathan Winer from testifying and to exclude his report is denied in part. Mr. Winer is a former U.S. Deputy Assistant Secretary of State for International Law Enforcement.

Plaintiff proffers Mr. Winer to testify as a rebuttal witness to defendant's expert witnesses Anne Vitale and Paul Schott, *see* Part III.B.1, *infra*.

Mr. Winer is qualified to testify as a rebuttal expert on U.S. banking terminology, standards, and practices. The witness's background will not prevent adequate cross-examination.

Mr. Winer is not qualified under *Daubert* and Rule 702 to opine as to Hamas's agenda or relationship with terrorist organizations. He will not be permitted to testify as to Hamas and its interaction with charitable organizations.

### 12. Michael Diamond

Defendant's motion to preclude the lay testimony of Michael Diamond is denied.  Mr. Diamond is an eyewitness to the attack and took photographs of the attack.

Plaintiff shall promptly produce to defendant any photographs of the scene of the attack that Mr. Diamond took on April 4, 2008.

Defendant may depose Mr. Diamond before trial concerning his ability to authenticate a relevant video.  Defendant may renew its motion to exclude Mr. Diamond's testimony if a reason to do so is developed at Mr. Diamond's deposition.

### B.  Witnesses Proffered by Defendant and Challenged by Plaintiff

### 1.  Anne T. Vitale and Paul Allen Schott

Plaintiff's motions to preclude defendant's expert witnesses Anne T. Vitale and Paul Allen Schott from testifying and to exclude their reports are denied.  (Ms. Vitale submits a case-in-chief report and report in rebuttal to plaintiff's expert witnesses Jimmy Gurulé and Nelson Everhardt, discussed *supra* Parts III.A.8-9.  Both of Ms. Vitale's reports are admitted.)  Defendant proffers Ms. Vitale and Mr. Schott to testify as to the customs and practices—specifically, United States banking regulations—under which the Bank operated in the United States.

Ms. Vitale is a former head of global compliance for Republic National Bank and now is a consultant to financial institutions, government agencies and law firms on money laundering and terrorist financing issues.  Mr. Schott is a former Assistant General Counsel of the United States Treasury Department and Chief Counsel of the Comptroller of the Currency.

Plaintiff mainly attacks the reports and testimony of Ms. Vitale and Mr. Schott as unhelpful to the jury's assessment of the Bank's liability. The Bank's state of mind is a central issue in this litigation. *See Gill*, 2012 WL 4960358, at *49. Testimony as to the content of banking industry standards and practices—and the Bank's compliance with such standards and practices—will be valuable to a jury likely to be unfamiliar with such topics. Compliance with United States anti-money laundering and terrorist financing policies and practices is not dispositive of the Bank's liability in this case. The witness's background will not prevent adequate cross-examination.

### 2. William M. Isaac

Defendant proffers William M. Isaac, a former Chairman of the Federal Deposit Insurance Corporation and current Chairman of Fifth Third Bancorp, to offer expert testimony about international banking practices and the oversight of international bank transfers.

Plaintiff does not move to exclude Mr. Isaac's report or testimony. Mr. Isaac's experience, methodology and reports meet *Daubert*'s and Rule 702's requirements. He opines on a topic of critical importance to this litigation and his testimony will be helpful to the jury.

Mr. Isaac's report and testimony are admissible.

### 3. George T. Abed

Plaintiff's motion to preclude defendant's expert George T. Abed from testifying and to exclude his report is denied. Mr. Abed served as Governor and Chairman of the Palestinian Monetary Authority from 2005 through 2007.

Defendant proffers Mr. Abed to testify about Palestinian money-laundering regulations applicable to the Bank.

Plaintiff contends that Palestinian law and policies are irrelevant to the question of whether the Bank materially provided support to Hamas and will serve to confuse the jury on the question of whether the Bank recklessly, knowingly, or intentionally provided material support to Hamas.

The report and testimony of Mr. Abed is probative, but not dispositive, of the Bank's state of mind. The advisory committee note to Rule 704 of the Federal Rules of Evidence makes it clear that "the so-called 'ultimate issue' rule is specifically abolished." Fed. R. Evid. 704 advisory committee note. Critical to determining admissibility of an expert opinion is whether it will be helpful to the jury. *Id.* Here, the jury will be aided by an explanation of the regulations under which the Bank operated in the Palestinian Territories, specifically in Gaza. Mr. Abed's testimony about increasingly restrictive banking regulations in the Palestinian Territories— discussing the effect on banking by the advent of the Oslo Accords in 1993 and Hamas's takeover of Gaza in 2007—will help establish the Bank's state of mind in context, particularly in the years prior to the attack. The witness's background will not prevent adequate cross-examination.

Plaintiff may offer an expert witness to rebut Mr. Abed's report and testimony in the form of a summary affidavit.

### 4. Marwan Nsouli

Plaintiff's motion to preclude defendant's expert Marwan Nsouli and to exclude his report is denied. Mr. Nsouli is a former Vice-Governor of the Central Bank of Lebanon (1998-2008) and former Chair of the National Coordination Committee on Fighting Money Laundering (2002-2008).

Defendant proffers Mr. Nsouli to opine on the development of anti-money laundering and anti-terrorist financing regulations in Lebanon, placing particular emphasis on the promulgation in 2001 of Lebanon's first law proscribing money laundering and terrorism financing.

Plaintiff contends that Mr. Nsouli's testimony is inadmissible because it is irrelevant and more prejudicial than probative. Alleged by plaintiff is that the Bank provided material support to Hamas through maintenance of a bank account for Osama Hamdan, an SDGT whose account was located in the Bank's Lebanese branches. *See* Am. Compl. ¶¶ 49-62.

Mr. Nsouli's testimony is relevant to key issues in this case. A course of conduct followed in order to comply with Lebanese law is relevant to defendant's state of mind. Compliance with Lebanese law only sheds light on the Bank's mental state; it is not dispositive of the Bank's compliance with United States law. The witness's background will not prevent adequate cross-examination.

Plaintiff may offer an expert witness to rebut Mr. Nsouli's report and testimony in the form of a summary affidavit.

### 5. Chakib Cortbaoui

Plaintiff's motion to preclude defendant's expert Chakib Cortbaoui from testifying and to exclude his report is denied. Mr. Cortbaoui is a Lebanese lawyer and leading authority on Lebanese banking law and regulation. He is a past president of the Beirut Bar Association and was recently appointed the Minister of Justice in Lebanon.

Defendant proffers Mr. Cortbaoui to testify as to Lebanon's Special Investigation Committee ("SIC") and the legal and regulatory obligations of a Lebanese bank toward its customers when a bank closes a customer's account. The SIC investigates possible money laundering offenses and works with the United States and other nations to combat anti-terrorism financing.

Plaintiff contends that Mr. Cortbaoui's testimony is inadmissible because it is irrelevant and more prejudicial than probative. Lebanon's laws are particularly probative of the Bank's state of mind in handling the account of Osama Hamdan. The State Department designated Mr. Hamdan as an SDGT in August 2003. *See* Am. Compl. ¶ 49. Plaintiff alleges that the Bank, by returning the approximately $8,500 balance remaining in Mr. Hamdan's account when the Bank closed his account in 2005, recklessly violated 18 U.S.C. §2339A and is liable for plaintiff's injuries. *See* Am. Compl. ¶¶ 62, 240-49.

Defendant admits that it returned approximately $8,500 to Mr. Hamdan but asserts the return of funds was due to compliance with certain Lebanese banking laws that require the return of money to the owner of a closed account. *See* Hr'g Tr. 97:2-6, Oct. 3, 2012, CM/ECF No. 179 ("In fact, what the bank did, Your Honor, was to comply with Lebanese law 318 by freezing [the

Hamdan account], placing it in the suspense account and then in the absence of particular direction from the regulator, returning the funds to their lawful owner as required by Lebanese law.").

Mr. Cortbaoui's testimony and report respond to plaintiff's allegations that the Bank recklessly, knowingly or intentionally materially supported a terrorist by returning funds to Mr. Hamdan. Testimony about Lebanese banking law will assist the jury in determining the Bank's state of mind at the time it returned the remaining funds in the Hamdan account. The Bank's compliance with Lebanese banking law is not dispositive of its compliance with United States law or its decision for returning the remaining funds in the Hamdan account. The background of this witness will not preclude adequate cross-examination.

Plaintiff may offer an expert witness to rebut Mr. Cortbaoui's report and testimony in the form of a summary affidavit.

### 6. Yair Dagan

Plaintiff's motion to preclude defendant's expert Yair Dagan from testifying and to exclude his report is denied. Mr. Dagan is a consultant to Israeli financial institutions on the subjects of electronic banking and prohibited-party transfers. He previously served as a systems analyst for the IDF and as Head of Foreign Trade Systems for the Israeli bank, Bank Hapoalim.

Defendant proffers Mr. Dagan to testify as to the Bank's correspondent banking relationship with Israeli banks, Israeli banking regulations under which the Bank operated, and Israeli terrorist-designation lists that allegedly put the Bank on notice that certain *zakat* committees were front groups for Hamas.

Plaintiff contends that Israeli laws and policies on banking are irrelevant. The factfinder in this case will be required to find that the Bank "probably was acting with the knowledge that funds it was making available to Hamas'[s] political branch would probably substantially be leaked to Hamas'[s] military branch" and "probably was aware . . . that American citizens who were in close proximity to Israelis would probably be harmed" because of the Bank's provision of banking services to Hamas. *See Gill*, 2012 WL 4960358, at *49.

Evidence of the foreign banking laws and practices, and attitudes towards those laws and practices, is probative, but not determinative, of the Bank's state of mind. The general attitude and views toward Israeli terrorist-designation lists by Israeli regulators and banks is relevant to what the Bank was aware of and could be expected to believe during the relevant time period. The diligence by which Israeli correspondents of the Bank monitored account holders and distributees designated as terrorists is probative of whether the Bank's conduct was reckless, knowing, or intentional. *See Gill*, 2012 WL 4960358, at *31 (discussing mental state test to be applied). The background of this witness will not preclude adequate cross-examination.

Plaintiff may offer an expert witness to rebut Mr. Yagan's report and testimony in the form of a summary affidavit.

### 7. Jonathan Benthall

Plaintiff's motion to preclude defendant's expert Jonathan Benthall from testifying and to exclude his report is denied. Mr. Benthall is an Honorary Fellow in the Department of Anthropology at University College, London. He has published extensively on the topic of *zakat* committees operating in the Palestinian Territories.

Defendant proffers Mr. Benthall to opine on the role and importance of *zakat* committees in the distribution of charitable goods and services.  His report responds to plaintiff's experts Matthew Levitt and Arieh Sptizen, *see* Parts III.A.5-6, *supra*, both of whom testify as to Hamas's use of charitable groups to finance terrorism.  Mr. Benthall will testify as to the approval by regulatory authorities and international non-governmental organizations of *zakat* committees.

Determination of whether the Bank provided material support to Hamas vis-à-vis *zakat* committees necessarily requires consideration of whether those *zakat* committees were actually terrorist front groups and reasonably perceived to be so during the relevant time period.  Mr. Benthall's report and proposed testimony will assist the jury in assessing the Bank's conduct and state of mind.  That the jury will ultimately need to decide whether the Bank provided financial services to Hamas through *zakat* committees in violation of United States law does not disqualify Mr. Benthall's testimony.  *See* Fed. R. Evid. 704 advisory committee note.

Any concern by plaintiff with Mr. Benthall's credibility can be addressed through effective cross-examination.  *See* Fed. R. Evid. 705 advisory committee note.

### 8.  Beverly Milton-Edwards

Plaintiff's motion to preclude defendant's expert Beverly Milton-Edwards and to exclude her reports is denied.  Professor Milton-Edwards is a professor in the School of Politics, International Studies and Philosophy at Queen's University, Belfast.  She has authored books on Middle Eastern politics and terrorism and political violence.

Professor Milton-Edwards proffers a case-in-chief report, a rebuttal report to the reports authored by plaintiff's experts Matthew Levitt and Arieh Spitzen, discussed *supra*, Parts III.A.5-6, and a supplemental case-in-chief report.

Professor Milton-Edwards's case-in-chief report opines on the perception of *zakat* committees and provides context for the jury to assess whether the Bank recklessly, knowingly, or intentionally provided financial services to the *zakat* committees alleged to be Hamas front groups. *See Gill*, 2012 WL 4960358, at *31 (discussing mental state test to be applied). Her rebuttal report similarly speaks to *zakat* committees and whether they were controlled by Hamas. In her supplemental case-in-chief report, Professor Milton Edwards will testify as to the reliability of Hamas's claims of responsibility for the attack that allegedly injured plaintiff.

Professor Milton-Edwards's reports and testimony conform to Rules 702 and 403 of the Federal Rules of Evidence. She is qualified to testify as an expert by her credentials and experience. Her reports and proposed testimony are relevant to the issues in this litigation and not unfairly prejudicial to plaintiff. That Professor Milton-Edwards's rebuttal report conflicts with the testimony of plaintiff's experts does not control admissibility. *See* Fed. R. Evid. 702 advisory committee note.

Any alleged deficient reasoning employed by Professor Milton-Edwards in reaching her conclusions does not disqualify her. Any such infirmities go to the weight, not the admissibility, of her testimony and can be drawn out through effective cross-examination.

Defendant shall promptly produce to plaintiff any interview notes that Professor Milton-Edwards relied upon in formulating her opinions and drafting her reports.

### 9. Ilan Paz

Plaintiff's motion to preclude defendant's expert Ilan Paz and to exclude his report is granted. Mr. Paz is a retired general of the IDF. He served as Head of Civil Administration in the West Bank from 2002 through 2005.

Defendant proffers Mr. Paz to opine on the effect of security measures imposed by Israel on Palestinians during the Second Intifada. His report states that, consistent with his position of command, he would have learned of any support provided by the Bank to *zakat* committees, Hamas, and any terrorist entity.

Mr. Paz's report and testimony run afoul of *Daubert*, Rule 702, and Rule 403. Testimony as to the non-prosecution of the Bank by the IDF is irrelevant to whether the Bank provided material support to Hamas or whether certain *zakat* committees are front groups for Hamas. *See* Fed. R. Evid. 403; *cf. United States v. Rodriguez*, 582 F. Supp. 2d 486, 487 (S.D.N.Y. 2008) (evidence of dismissal of prior charges in trial for same conduct four years later ruled inadmissible because it would confuse the jury and cannot be used as proof of innocence). Any weight accorded to Mr. Paz's testimony would be excessively prejudicial in light of the trust a jury is likely to place in hearsay, gathered through confidential government work, that a retired general will convey through expert testimony. The information underlying his report and testimony was likely obtained secretly in his official position and would not be subject to effective cross-examination.

### 10. Bar Zakay

Plaintiff's motion to preclude defendant's expert Bar Zakay and to exclude his report is granted. Mr. Zakay is a retired colonel of the IDF who spent the bulk of his career in military intelligence.

Defendant proffers Mr. Zakay to testify as to the security situation and violence present at the location in Gaza where plaintiff was shot at the time of the attack. Defendant seeks to employ Mr. Zakay in support of a contributory fault defense, contending that plaintiff assumed the risk of injury by gunshot when he toured an area with a purportedly high rate of violence.

Mr. Zakay's report and testimony are excluded for risk of confusion and prejudice under Federal Rule of Evidence 403. Defendant is permitted to brief the relevance and existence of a contributory fault defense at summary judgment. The information this witness obtained was likely obtained secretly in his official position and would not be subject to effective cross-examination.

### 11. Pinhas Shmilovitch

Plaintiff's motion to preclude defendant's expert Pinhas Shmilovtich and to exclude his report is granted. Mr. Shmilovitch is a retired member of the ISA. He held a number of senior positions in the ISA, including Head of Cross-Border Terrorism (1997-2000) and Head of Internal Affairs (2001-2004).

Defendant proffers Mr. Shmilovitch to testify as to the capability of the ISA to monitor and thwart terrorist activities aimed at Israel and, specifically, how the ISA viewed, investigated and treated *zakat* committees.

Mr. Shmilovitch's report and testimony are excluded under Rules 703 and 403.  Plaintiff will be unable to effectively cross-examine Mr. Shmilovitch.  Much, if not all, of Mr. Shmilovitch's testimony is based on facts developed through confidential ISA investigations and investigatory methods.  Any weight to Mr. Shmilovitch's testimony would be excessive in light of plaintiff's inability to adequately cross-examine Mr. Shmilovitch as to the basis of his conclusions.

### 12. Barouch Yadid

Defendant proffers Barouch Yadid as a rebuttal expert in response to plaintiff's experts Matthew Levitt and Arieh Spitzen, *see* Parts III.A.5-6, *supra*, on the topics of Hamas's activities in the West Bank and Gaza.

Plaintiff does not move to exclude Mr. Yadid's report or testimony.  Mr. Yadid's experience, methodology and reports meet all of *Daubert*'s and Rule 702's requirements.  He opines on Palestinian charitable organizations and Palestinian civil institutions and whether they were front groups for Hamas.  Mr. Yadid's testimony is of critical importance to this litigation and will be helpful to the jury.

### 13. Robert Lacey

Plaintiff's motion to preclude the report and testimony of defendant's expert witness Robert Lacey is denied.  Mr. Lacey is a historian who has authored two books about Saudi Arabia.

Defendant proffers Mr. Lacey to testify as to the legitimacy of Saudi Arabian humanitarian efforts directed at helping Palestinians living in Gaza and the West Bank, including

the Saudi Committee relief program. He opines on the background and origins of the Saudi Committee and responds to plaintiff's allegations that the Saudi Committee was a Hamas-supporting organization to which the Bank provided material support. *See* Am. Compl. ¶¶ 175-99.

Mr. Lacey's background and professional experience qualify as "specialized knowledge" gained through "experience, training, or education." Fed. R. Evid. 702. Mr. Lacey's books about Saudi Arabia are the products of extensive study of modern Saudi Arabia through research of news and academic articles, the Saudi Committee website, bank-documents produced in this litigation, and interviews. Mr. Lacey's testimony bears directly on the Saudi Committee's conduct. It will help the jury assess whether the Bank acted recklessly, knowingly, or intentionally in its provision of financial services to the Saudi Committee.

**IV.        Conclusion**

With the limitations described above, and those provided in oral instructions on the record to counsel, the parties' motions *in limine* to exclude expert and lay testimony are granted in part and denied in part.

In the event summary judgment is not granted, argument on additional *in limine* motions will be heard November 15, 2012.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:   October 19, 2012
        Brooklyn, New York