UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
MATI GILL,                    : 11-cv-3706-JBW-VVP
            Plaintiff,        :
                              :
    - versus -                : U.S. Courthouse
                              : Brooklyn, New York
ARAB BANK, PLC,               :
            Defendant         : October 25, 2012
------------------------------X


TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY CONFERENCE
BEFORE THE HONORABLE VIKTOR V. POHORELSKY
UNITED STATES MAGISTRATE JUDGE

**A  P  P  E  A  R  A  N  C  E  S:**


**For the Plaintiff:**        **Gary Osen, Esq.**
                              **Joshua Glatter, Esq.**
                              **Ari Ungar, Esq.**
                              **Aaron Schlanger, Esq.**



**For the Defendant:**        **Kevin Walsh, Esq.**

**Transcription Service:**    **Transcriptions Plus II, Inc.**
                              740 Sharon Road
                              Copiague, New York 11726
                              Transcriptions2@verizon.net


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

```
                         Proceedings                      2
 1          THE CLERK:  Civil Cause for Discovery
 2   Conference, in 11-cv-3706, Gill v. Arab Bank.
 3          Will counsel for the plaintiffs please state
 4   their appearances for the record.
 5            MR. GLATTER:  Good afternoon, Judge Pohorelsky.
 6            Joshua Glatter from Osen, LLC on behalf of
 7   plaintiff Mati Gill.  I'm joined on this call by my
 8   colleagues Ari Ungar, Aaron Schlanger, and Gary Osen.
 9   Mr. Schlanger and Mr. Osen -- I'll be principally
10   speaking on behalf of plaintiff but Mr. Osen or
11   Mr. Schlanger may supplement a few discrete issues,
12   depending on what questions the Court has.
13            MR. WALSH:  And you have Kevin Walsh for Arab
14   Bank, your Honor.
15            THE COURT:  Good afternoon.  Can you all hear
16   me?
17            MR. GLATTER:  Yes, your Honor.
18            MR. WALSH:  Yes, your Honor.
19            THE COURT:  I did receive the plaintiff's
20   letter of October 24th, as well as the defendant's
21   response dated October 25th.  The plaintiff's letter asks
22   the Court to reconsider its rulings from two days ago and
23   as I understand the argument, it's premised on the fact
24   that there were requests, in fact, made on August 27th to
25   which responses were received on October 10th, which
```

```
                          Proceedings                    3
```

1  sought discovery for a period of time post-2004.

2          And I'm not sure I completely understand the

3  argument but I think the plaintiff was acting under the

4  impression that my rulings with respect to the new

5  written discovery requests were premised on the fact that

6  they should have sought discovery for that period of time

7  after 2004.  And having failed to do so, they could not

8  do so now.

9          I didn't mean to suggest by that ruling that

10 requests that were made during the time period set aside

11 for discovery were improper and that there was no -- it

12 strikes me that there was no reason why you couldn't have

13 moved to compel or to overrule the objections that were

14 lodged by the defendant to those August 27th requests.

15         In a sense, your October 24th proposed order,

16 the proposed order annexed to your October 24th letter,

17 essentially asks the Court to overrule those objections

18 and in a sense the October 24th letter could be taken as

19 a motion to compel.

20         Ultimately, I don't understand why any ruling

21 on requests timely made has anything to do with the

22 discovery requests that I ruled were out of time two days

23 ago.  So maybe you can help me on that, Mr. Glatter.

24         MR. GLATTER:  Yes, your Honor.  Let me -- I'm

25 going to try to do that. I think the key thing to

Proceedings                                             4

1   understand is that the -- when we received the responses

2   to what we described as the second Gill Stockman (ph.)

3   requests on October 10th and those came in after we had

4   learned from Judge Weinstein that he was disinclined to

5   adopt the sanctions that Judge Gershon had issued in

6   Linde which arise out of the very discovery record that's

7   been imported into the case.

8           And therefore, with that knowledge and then

9   with now having been confirmed for the first time

10  substantively by the bank that it was affirmatively

11  refusing to produce or apparently even search for

12  documents outside of the United States based on its

13  continued assertion of foreign bank secrecy, the conflux

14  of both of those developments gave rise to the need to

15  issue or purpose issuing the draft discovery that was

16  attached to our October 22nd letter, the proposed

17  interrogatories and document requests because those

18  function to essentially substitute or as meaningfully as

19  they can, for records that the defendant is now

20  affirmatively refusing to produce.

21          And that's important because it's not just a

22  function of what remedy the plaintiffs are entitled to to

23  restore the evidentiary balance but it's because under

24  the defendant's logic, their position appears to be and

25  frankly that's I believe reflected in their letter of

Proceedings                              5

1    today, that the substantive objection itself to

2    production under foreign bank secrecy law is essentially

3    back to square one.

4           And so because we couldn't really put that

5    picture together until October 10th at the earliest,

6    that's what gave rise to the need to purpose additional

7    pretrial discovery and we immediately presented that to

8    Judge Weinstein the very next day on October 11th.

9           MR. WALSH:  May I respond, your Honor.

10          THE COURT:  You may but I must say I do not --

11   I am still not understanding -- and again, I did not

12   compare the discovery requests that were the subject of

13   the Court's rulings two days ago with the second Gill

14   document request.

15          MR. GLATTER:  I think it's -- I'm sorry, your

16   Honor.

17          THE COURT:  To the extent that they don't

18   overlap, then the fact that you were surprised by Judge

19   Weinstein's ruling --

20          MR. GLATTER:  Yes, your Honor, I --

21          THE COURT:  I guess what I'm trying to say is

22   that the fact that you were surprised by Judge

23   Weinstein's ruling doesn't furnish a reason for you to

24   have failed to ask for those things beforehand.  And to

25   the extent that you already did ask for those things,

Proceedings                                    6

1   well you're entitled to make a motion to compel which is

2   what I'm basically taking the October 24th letter to be.

3          But I don't know why -- well the lateness of

4   the defendant's response certainly justifies an emergency

5   application to compel -- I said the lateness, the fact

6   that they have responded on the 10th to the earlier -- to

7   the second Gill document requests.  I mean that's when

8   they -- when the -- a motion to compel got teed up as to

9   those requests.

10         It does not seem to me to furnish a reason or

11  an excuse for not having asked for the other things that

12  were the subject of the most recent set of discovery

13  requests.  And so therefore, I don't find any basis to

14  upset my rulings from two days ago.

15         Mr. Walsh, you can be heard if you wish.

16         MR. WALSH:  No, your Honor.  If, in fact,

17  there's no need to address the reconsideration motion, I

18  prefer to save the time of the Court.

19         THE COURT:  So let me turn though to the fresh

20  set of requests which I think are best -- are the fresh -

21  - are the new discovery rulings that I am being asked to

22  make because -- and I think those are best teed up by the

23  proposed production order that's Exhibit C to the

24  plaintiff's submission.

25         MR. GLATTER:  Your Honor, yes, I think that's

Proceedings                                7

1   correct and I would only add the observation that to the

2   extent that it's a new ruling, I think that that's

3   probably only to the extent that it is applying to the

4   slightly expanded relevant period for this case.

5           We noted in our letter yesterday and the other

6   day, your Honor issued a ruling on December 10, 2007

7   after extended motion practice initiated by the defendant

8   seeking clarification of the May 7, 2007 order.  And in

9   that ruling your Honor concluded that the materials

10  requested in plaintiff's broader scope were relevant,

11  were appropriate.  That the fact that they sought to

12  gather documents from a larger geographic area than

13  merely the Palestinian territories, Lebanon and Jordan,

14  was appropriate.

15          So to some extent I think the Court's ruling

16  here today builds upon the prior findings issued back in

17  December of 2007.

18          MR. WALSH:  Your Honor, I confess that I am

19  somewhat confused.  It appears that the plaintiff is

20  asking you to enter an order compelling Arab Bank to

21  produce documents that were never requested of it because

22  there was no such timely request.  And I am mystified as

23  to how we can put such a procedural cart before the horse

24  here.

25          THE COURT:  Well I think what -- if I

Proceedings                                            8

1    understand what Mr. Glatter is saying, he's saying that

2    the document production order that is Exhibit C asks for

3    fresh records, or as a fresh request for discovery only

4    to the extent that it asks for records for the period

5    from 2005 to 2008.

6              That to the extent that it requires production

7    of records prior to 2005, it is merely an order that

8    mimics maybe not exactly but certainly doesn't ask for

9    more than or doesn't require more than what had been

10   ordered by me in the Linde action back in December or

11   whatever date in 2007 I entered that order.

12             So that in a sense, this production order

13   simply memorializes what I think the parties as I

14   understand the record in this case, were entitled to

15   infer from Judge Weinstein's rulings that the discovery

16   in the Linde case would apply here.  And that would mean

17   that discovery responses and it seems to me any rulings

18   on the motion -- I mean any orders by the Court that

19   discovery be produced.

20             Now I mean that it seems to me is a fair

21   assessment of what Judge Weinstein intended when he said

22   that the discovery from the Linde action would apply

23   here.  But I gather, Mr. Walsh, that you dispute that.

24             MR. WALSH:  Well I'm looking at page 2 of Mr.

25   Osen's letter of yesterday's date, your Honor, and

Proceedings                        9

1  there's a reference to in item C, a request for record

2  preservation purposes of categories of additional

3  discovery beyond those requested and I'm not certain as

4  to how, if at all, that figures in what your Honor is

5  being asked to do.

6            THE COURT:  Okay.  Well, maybe I --

7            MR. GLATTER:  Your Honor, I can address that if

8  you would like.

9            THE COURT:  Yes, you can.  I was focused -- and

10 let me tell you where my perhaps misunderstanding about

11 the scope of the production order comes from and it comes

12 from the explanation in the October 24th letter -- where

13 is it -- my goodness, I was just reading it.  As I

14 understood the scope of the order as laid out on page

15 6 --

16           MR. GLATTER:  Of our letter, your Honor?

17           THE COURT:  Yes.

18           MR. GLATTER:  That's correct, your Honor and --

19           THE COURT:  And that it basically asks the

20 Court to order -- that the defendant produce documents

21 requested in the -- by the second Gill document request

22 for the period from 2005 to 2008.  Now maybe it actually

23 goes beyond that.

24           MR. GLATTER:  No, your Honor, it doesn't.  Let

25 me just take a step back.  IO believe what Mr. Walsh was

Proceedings                    10

1   referring to with respect to categories of additional

2   discovery, that's subpoint C on page 2 of our letter of

3   last evening.

4            THE COURT:  Right, exactly.

5            MR. GLATTER:  And that is not material that is

6   covered in the proposed production order.  That is

7   essentially request the Court, at least make our -- if it

8   pleases the Court, to make a record to acknowledge that

9   those additional categories of discovery are relevant and

10  appropriate.  They're not being ordered for production

11  because number one, the defendant will refuse to produce

12  it or to allow its witnesses to so testify on those

13  issues based on its document position on foreign bank

14  secrecy and secondly, because of the compressed schedule

15  for this case, there isn't sufficient time to collect

16  such discovery.  That is a different issue from the much

17  more narrow and targeted discovery that's set forth in

18  the proposed production order which -- and your Honor I

19  think captured this perfectly a few moments ago,

20  essentially falls into two areas:  number one it -- to a

21  degree it resurrects the prior production requests that

22  were extant in the May 7th order that essentially became

23  somewhat dormant once the proceedings moved into

24  analyzing what Rules 37 remedy would issue in the Linde

25  case which as your Honor acknowledged at a November

Proceedings                                        11

1   hearing, likely mooted the need to proceed further to

2   analyze whether the May 7th order needed to be further

3   modified.

4          Secondly, in order to then harmonize it with

5   the expanded discovery period for this case, it sweeps

6   within it those documents that were requested in the Gill

7   plaintiff's second document request which essentially

8   asks for all transactions for what is now the same set of

9   individuals and entities and really the only difference

10  is that rather than being cut off at the 2004 year, it

11  covers for the additional period of 2008.  And that way

12  it essentially addresses both issues universally.

13         THE COURT:  Right.

14         MR. GLATTER:  So hopefully that clarifies it.

15         THE COURT:  It does in my mind and Mr. Walsh,

16  you may respond but as I understand it, Mr. Walsh's

17  objection and you can clarify for this for me if you --

18  because I want to make sure I understand your objection,

19  Mr. Walsh, you are reading subparagraph -- I should say

20  paragraph C on page 2 of the October 24th letter, as

21  basically a request that the Court order the production

22  of documents that were never requested.

23         And that's not what the plaintiff is seeking

24  now but I gather what the plaintiff is seeking is some

25  ruling by me that had those documents been requested,

Proceedings                                    12

1    they would have been appropriate for discovery in this

2    case.  And that's --

3              MR. WALSH:  I appreciate this clarification

4    from the plaintiff, your Honor.  Again, I would note that

5    it seems highly irregular that we are seeing an order to

6    compel the production of documents never requested.

7              But our fundamental objection, your Honor, now

8    that we have this clarification that we're only -- the

9    plaintiff is seeking only to extend the time period with

10   respect to discovery requests already made in Linde, our

11   primary objection, your Honor, is that an order of the

12   sort being requested here has utility to the plaintiff

13   for only one reason and that is to tee up a sanction

14   proceeding of the sort that was done in Linde.

15             And here we have a rather clear statement from

16   Judge Weinstein that he does not believe evidentiary

17   sanctions are appropriate which raises the question,

18   your Honor, of what the value of this is, especially if

19   it will only serve as a further international provocation

20   to governments that have already made their position

21   crystal clear in the ways we've set forth in our letter

22   to you, your Honor.

23             We don't understand what the point of this is.

24   It can have no point other than to seek to begin another

25   sanctions process of the very sort we were through in

Proceedings                            13

1   Linde.

2          THE COURT:  Well, did you want to respond?

3   I'll let the plaintiff respond.

4          MR. GLATTER:  Yes, thank you, your Honor.  With

5   respect to the defendant's substantive effort in their

6   letter today to convince your Honor apparently that no

7   sanction is warranted or as I read it, no production

8   order is warranted.  I mean that's really where the

9   rubber meets the road.  The claim is not so much what

10  remedy is appropriate but that the bank should not even

11  be ordered to produced anything.  That's not the issue

12  that's here today.

13         Your Honor issued a ruling in November 2006

14  regarding whether the Court would honor the defendant's

15  objection to production.  After a careful balancing test

16  under the restatement overruled that.  Judge Gershon

17  affirmed that order.  You reinforced that ruling in your

18  December 10, 2007 ruling.  I could spend an hour going

19  through the analysis set forth in Mr. Walsh's letter

20  today and pick it apart but I don't think unless your

21  Honor has any particular interest, that there's any need

22  to do that.

23         But in focusing on Mr. -- rather on

24  Judge Weinstein's prefatory comments on October 3rd, a

25  couple of things should be clear.  Judge Weinstein has

Proceedings                    14

1   not said that he is not going to issue sanctions in this

2   case.  He has not said what, if any, sanction he is going

3   to issue at trial.  He has given some general

4   observations regarding how he views it.  He has

5   nevertheless allowed us to argue it.  His comments at

6   best were pegged to what inferences he might draw at

7   summary judgment.

8           And it may ultimately be that Judge Weinstein

9   determines that he doesn't want to issue an adverse

10  inference instruction to the jury.  He doesn't want to

11  preclude the defendant from making arguments or offering

12  evidence.  I don't know that today.  Nobody does.

13          He may, however, conclude that he wants to

14  sanction the bank monetarily to the tune of millions of

15  dollars a day for its refusal to produce relevant

16  discovery.  Frankly, if Mr. Walsh read the article that

17  he cited in his letter, Judge Weinstein actually back in

18  1956 observed a case involving Swiss Bank that refused to

19  produce documents.  That Swiss Bank was a plaintiff.  The

20  trial judge dismissed the suit with prejudice,

21  notwithstanding the bank secrecy objection and

22  Judge Weinstein said, "There can be little doubt of the

23  soundness of this decision."  That part of the article

24  was not mentioned in Mr. Walsh's letter.

25          But the fact of the matter is, is that what we

Proceedings                                    15

1   are entitled to independent of remedy, if nothing else,

2   is a ruling that determines that the factors under the

3   restatement again support requiring the defendant to

4   produce the documents.

5          Whatever remedy flows out of that decision is a

6   matter for Judge Weinstein's discretion under Rule 37

7   which may or may not be impacted by the ruling of the

8   Court of Appeals in the Linde case but that is a

9   different issue from what the May 7 order accomplishes.

10  It is simply a document production order which based on

11  the Court's November 2006 ruling concerning the

12  substantive foreign bank secrecy objection and the

13  Court's balancing analysis under restatement 442 over

14  rule's that objection and requires production.  It is

15  essentially just documenting what the Court found in

16  November 2006 and then reinforced in December 2007.

17         MR. WALSH:  Your Honor, Mr. Glatter's comments

18  beg the question here and he hasn't responded to my

19  observation, that the sole purpose for this production

20  order is for him to use it as a springboard to seek

21  sanctions.  I mean we know that the statements of Judge

22  Weinstein are before you, your Honor.  You can read those

23  as easily as we can and Mr. Glatter can and we allow

24  those comments to speak for themselves.

25         But the position of the bank is clear.  It has

1    asserted bank confidentiality laws in response to these

2    document demands.  The purpose of this production order

3    is solely to seek a sanction order as to which we already

4    have a rather explicit statement from the Court that will

5    oversee any trial if one is to be conducted in this

6    action.

7              We think that this is just an unreasonably

8    provocative action that will be inflammatory of

9    international relations.  We can look to the long history

10   of this as it transpired in the Linde case.  We know

11   where it's ended which at the moment is before the Court

12   of Appeals.  We just don't think that the purpose for

13   which the plaintiff wants this in light of the procedural

14   status of everything in Linde and what Judge Weinstein

15   has said here is appropriate.

16             MR. GLATTER:  Your Honor, one additional

17   observation with respect to Mr. Walsh's comments just

18   now; I don't think they're at odds with anything that I

19   pointed out a few moments ago.  One cannot do any

20   analysis of what, if any, appropriate remedy is under

21   Rule 37 without first having an order in hand to produce

22   the materials.

23             And the only other thing I point out is as was

24   the case back in December 2007, this order is global in

25   scope.  Notwithstanding Mr. Walsh's comments about how

Proceedings                    17

1   this is going to cause an international incident and I
2   need to start digging my bunker right now, the fact of
3   the matter is is that there are documents that logically
4   need to be produced from England.  They need to be
5   produced from Germany because the bank had accounts for
6   specially designated global terrorists in both of those
7   nations.  Courts in this district have assessed bank
8   secrecy objections in England and in France.  I don't
9   know if they've done it in Germany.  And they have
10  overruled them.  There are cases my firm is litigating
11  and all I can tell -- say beyond that is we have defeated
12  those bank secrecy objections and the cases have
13  proceeded and there has not been Rule 37 sanctions
14  practice that followed.
15          So the bottom line is that Judge Weinstein has
16  made it clear that he intends to evaluate all these thing
17  ab initio and in light of that, he's entitled to have a
18  document production order in place for these materials
19  which your Honor has already concluded years ago were
20  highly relevant and appropriate and enabled the
21  plaintiffs to trace the trail of funds as deep as
22  possible and as internationally as possible because
23  that's the way this game works in terrorism financing.
24          And at that point, it's in Judge Weinstein's
25  hands or he may refer it back to your Honor for report

```
                           Proceedings                    18
```

1    and recommendation on Rule 37 implications of that but we

2    have to start with first principles.

3              THE COURT:  Mr. Walsh, I'll give you the last

4    word, if you want.

5              MR. WALSH:  I don't know what to make of

6    Mr. Glatter's reference to this as a game, your Honor, so

7    I'll leave that phrase alone.  But, you know, I can only

8    repeat and I won't do it at length, your Honor, that

9    things have changed significantly since your Honor

10   entered the Linde order at issue.  We tried to point out

11   in our letter to the Court that there has been extensive

12   development in the case law, including at the Supreme

13   Court level, the American Bar Association has weighed in.

14   The landscape has changed entirely with respect to what

15   the jurisprudence is on the subject.  And to view it as

16   the plaintiff is doing is simply the reflexive

17   application of what was done in 2006, we don't think is a

18   fair way to view the legal issues that are now presented

19   in 2012, your Honor.

20             THE COURT:  Okay.

21             MR. GLATTER:  Your --

22             THE COURT:  No, no.  No, no.  You've had plenty

23   of chance to argue.

24             MR. GLATTER:  No, I --

25             THE COURT:  You've had plenty of chance to

Proceedings                    19

1  argue.  Let me make my observations.

2        MR. GLATTER:  Yes, sir.

3        THE COURT:  I have read both letters.  I've

4  read them as carefully as I could given the constraints

5  of time.  I am not guided in this by trying to determine

6  what Judge Weinstein will or will not do, what motivated

7  him to say what he did or did not say in the past and

8  what he will or will not do with respect to any discovery

9  rulings I make.

10       I am approaching this as the judge who is being

11  asked to make discovery rulings, as I am in any number of

12  cases and I do that looking at the case, not from the

13  standpoint of how I think the district judge or the judge

14  who may be the trial judge in the case expects me to rule

15  or thinks I should rule; I do it -- I approach it the way

16  I think it ought to go.  And that's what's guiding me

17  here.

18       I do have to assess based on the developments

19  in the intervening years since 2007 when the -- I think

20  that's the last time I said anything about bank secrecy

21  in this case.  I do have to assess whether developments

22  in the period of time since then should change my mind

23  with respect to the bank secrecy objections that the bank

24  has now lodged in response to the second Gill production

25  order.  The landscape has, in fact, changed.

Proceedings                    20

1           That said, I haven't yet had the chance to

2   carefully consider how much it has changed and I don't

3   have the luxury of time, given the schedule that we're on

4   to assess it the way I would if I had more time.

5           I have reviewed what the defendant said has

6   changed the landscape.  It has not changed my mind and my

7   impression about the need for this kind of an order in

8   this kind of a case.  I understand that this may have

9   some implications for international relations but -- and

10  that that is something that at least some of the

11  authorities think this court ought to take into

12  consideration but it's very difficult for me to assess

13  that and to give that an extended amount of weight.  And

14  so, I can't say that I do.

15          The other considerations that underlie or

16  underlay my decision in 2007 still apply, I believe and

17  therefore, I think that an order of the kind that is

18  requested by the plaintiff here is appropriate for me to

19  enter and that's what I will do because I understand it

20  only to compel documents that were timely requested and

21  to otherwise essentially make the same record here to the

22  extent that there's any confusion about whether the

23  document requests and the order that I entered in the

24  Linde case with respect to documents that were to be

25  produced there, doesn't apply here because I believe that

Proceedings                    21

1    there's adequate basis for ordering those documents here.

2    I did at the time and I do now again.

3              So the document production order -- and you

4    know, I did try to review it as I understand it and I

5    want to make this absolutely clear because if it goes

6    beyond what was requested in the August 27th letter or

7    what I ordered to be produced in the Linde action, then I

8    am not -- then it's not intended to go any farther than

9    that.

10             But as to those documents that were requested

11   in the second Gill document request, and to the extent

12   that these requests -- I mean, this order covers

13   documents previously ordered to be produced in Linde, it

14   is entered and I'll sign it and I will enter it. So

15   that's the ruling.

16             MR. GLATTER:  Thank you, your Honor.

17             THE COURT:  I believe that -- I know this puts

18   everybody under a tight schedule but the bank has to make

19   its position clear with respect to whether it's going to

20   abide by the order or it's going to continue to assert

21   bank secrecy -- you have the right obviously to appeal as

22   well, Mr. Walsh.

23             MR. WALSH:  We understand that, your Honor.

24             THE COURT:  Yes.  But you do have the right --

25   you need to make it clear by October 29th whether or not

Proceedings                                    22

1   you will comply with the order or in what respect you

2   will or won't or you certainly are entitled to appeal.

3            MR. WALSH:  Well, your Honor, I think I can

4   state today, especially in light of the fact that this

5   very issue is now pending before the Court of Appeals

6   that the bank will not violate the criminal laws of these

7   jurisdictions and maintains the position today that it

8   articulated in its appeal that it believes that

9   inappropriate that it be sanctioned for its lawful

10  compliance with these penal laws.

11           THE COURT:  Okay.  I take it then that you will

12  maintain, at least with respect to the second Gill

13  document request, you maintain the same objections that

14  you had then.  You will just -- you won't go any --

15  beyond what you've already provided in response to that

16  and you won't go beyond what you've already provided in

17  connection with the earlier order.

18           MR. WALSH:  What we would like, your Honor, is

19  as the Court suggested, the opportunity to evaluate our

20  right of appeal of this order.

21           THE COURT:  Well you --

22           MR. WALSH:  And to exercise the timely right of

23  appeal, should we choose to pursue it.

24           THE COURT:  You do have that right and I won't

25  impinge on that.

```
                        Proceedings                    23

 1          MR. WALSH:  Thank you, your Honor.

 2          MR. GLATTER:  Your Honor?

 3          THE COURT:  All right.  Is there anything else?

 4   Now, I --

 5          MR. GLATTER:  (Indiscernible).

 6          THE COURT:  I reject the request that I enter a

 7   discovery ruling on requests not made.  So to the extent

 8   that in the October 24th letter, there is a request that

 9   I make some findings and then I am referring to paragraph

10   C of the October 24th letter -- I'm looking for it here.

11   Oh, here it is -- I am not making any rulings with

12   respect to requests not made.

13          MR. GLATTER:  Your Honor, in other words, the

14   description set forth at pages 12 and 13 of our letter of

15   yesterday; correct?  I just want to make sure --

16          THE COURT:  Yes, I'm looking through this.  I

17   mean to the -- I understand that to be documents and --

18   well there's depositions and basically information not

19   previously requested.

20          MR. GLATTER:  Well, your Honor, the only thing

21   I would say is that it's not entirely divorced from the

22   documents that are being ordered produced in Exhibit C.

23   In other words, the type of discovery that's described at

24   pages 12 and 13 of Mr. Osen's letter of yesterday, just

25   from a common sense standpoint would be the sorts of
```

Proceedings                                    24

1   questions one would likely put to witnesses, both of the

2   formerly deposed witnesses and 30(b)(6) representatives

3   of the bank's branches outside Jordan, Palestine and

4   Lebanon, if the bank actually agreed and complied with

5   its discovery obligations in the proposed production

6   order that your Honor is going to be entering today.

7         I don't think -- in other words, our point with

8   those requests is just to point out even if the document

9   production order is entered, the schedule for the case

10  and the bank's continuing assertion of bank secrecy which

11  you just heard from Mr. Walsh a moment ago, would

12  essentially moot and render irrelevant initiating any of

13  this discovery which we would otherwise logically be

14  entitled to.  I mean if you go through it point by point,

15  it's the sort of (indiscernible) --

16        THE COURT:  I could cut you off.  I could cut

17  you off.  I disagree.  Even if they had provided all that

18  information because you had not timely requested that

19  additional discovery, you would not have been entitled to

20  get it.  There was a discovery cut-off.  The discovery

21  responses to the August 27th -- you didn't request that

22  discovery during the time period.  Maybe you could have

23  gotten it in follow-up discovery but you wouldn't have

24  had time for the follow-up discovery.

25        So I am -- to the extent that you're asking me

Proceedings                    25

1    to make the determination that these are things that you

2    could have gotten had you gotten -- had you made a timely

3    request, I'm afraid I'm declining -- I will decline to

4    rule on that.  Okay?

5            MR. GLATTER:  I understand, your Honor.

6            THE COURT:  All right.

7            MR. GLATTER:  My colleague, Mr. Osen, had one

8    other clarifying question if I could pass the mic.

9            THE COURT:  Okay.  Sure.

10           MR. OSEN:  Good afternoon, your Honor.  Just

11   for purposes of the production order itself, it may make

12   sense to still reference October 29th to the extent that

13   the language says, defendant shall produce by a certain

14   date.

15           THE COURT:  Yes, I know, on the first page.  I

16   saw --

17           MR. OSEN:  Right, right.  So, I mean I think

18   you can word it --

19           THE COURT:  I'm going to enter --

20           MR. OSEN:  -- however you want but the date

21   probably -- something to indicate that there was a time

22   certain.

23           THE COURT:  Yes, I will do that.

24           MR. WALSH:  Your Honor, in connection with any

25   possible appeal by the bank, may we inquire if the Court

```
                    Proceedings                26
```

1   plans on issuing a written opinion of any length or if we

2   should rely on the transcript today?

3               THE COURT:  You'll need to rely on the

4   transcript.  I just simply do not anticipate being able

5   to issue a written decision between now and -- well, I

6   just don't think I'm going to have the opportunity to

7   enter a written decision.

8               MR. WALSH:  Thank you.

9               THE COURT:  But the ruling does rest entirely

10  on the considerations that were articulated in the Linde

11  case.

12              MR. GLATTER:  And thus, today's transcript is

13  so-ordered; correct, your Honor?

14              THE COURT:  I don't know what you mean by the

15  transcript is so-ordered.

16              MR. GLATTER:  I --

17              THE COURT:  The reasons for the decision that

18  has been announced today are contained in the transcript.

19              MR. GLATTER:  Understood.

20              THE COURT:  Okay.

21              MR. GLATTER:  Technical point.

22              THE COURT:  Okay.  All right.  Anything else?

23              MR. GLATTER:  Not from plaintiff, your Honor.

24              MR. WALSH:  No.

25              THE COURT:  Very well.

Proceedings                              27

1           MR. GLATTER:  Thank you.

2           MR. WALSH:  Thank you.

3           MR. OSEN:  Thank you, your Honor.

4           THE COURT:  Goodbye.

5               (Matter concluded)

6                   -o0o-

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

28

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **26th** day of **October**, 2012.

*Linda Ferrara*

Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.